Our fourth case for this morning is Noonan v. Commissioner Saul, number 19-3110, and we should have, and appear to have, Ms. Marcus and Ms. Schwartz. So, Ms. Marcus, you may begin. Thank you, Your Honor. Good morning. Counsel, may it please the Court. Noonan alleges that the administrative law judge violated long-standing circuit precedent in failing to build an accurate and logical bridge between evidence and result, in particular pertaining to her subjective symptom analysis. She maintains that the administrative law judge violated the Commissioner's Regulation 20 CFR 4041529C3 in failing to address most of the regulatory factors enumerated in that listing, I'm sorry, that regulation, including daily activities, the location, duration, frequency, and intensity of pain, medications and dosages, and measures utilized to alleviate pain. Ms. Marcus, is it your position that her primary problem is the diabetes or is it the lupus? It seems to have shifted over the course of this case because the lupus doesn't, well, the lupus seems to be as under control as it can be, but the diabetes may be a different story, but I just wondered what your position was for the administrative law judge in particular. Sure. So our position is that the lupus, as far as the record's concerned, after she goes off of the medication is stable and that the symptoms seem right now to be stabilized. It's the neuropathy that had a different result in this case, and that's where the administrative law judge in our position failed to link the record to the conclusion that both the conservative care and the improvement was caused for the decision. And this is diabetic neuropathy, as I understand. Correct, Your Honor. It's based on the fact that the record shows that her symptoms had progressed in both sensory symptoms, because it's sensory neuropathy, and in both the severity of the symptoms. And then the record goes on to show that in her pain management that she's prescribed and in her mental health treatment, she's reporting this severe, significant pain that's precluding the ability to put on her shoes certain times throughout the week or get out of bed. And it's our position that the administrative law judge, while considering the five out of seven good days, only considered that in the context of the mental health treatment and not in the context of her neuropathy. And the remainder of that sentence is that the neuropathic pain was keeping her in bed two days per week, which is consistent with what's reported in the record that rest and lying down is alleviating her pain, and it's also consistent with her testimony as well. So it's our position that the... What about use of her hands? I mean, the ALJ seems to be trying to meet her halfway with a sedentary assessment, and one would imagine sedentary work probably would involve significant use of hands. I guess this was frequent, but not all the time, if I'm remembering correctly. Sure. So it's our position that with respect to the hand, she's reporting to her providers that she's having numbness and tingling, which is the symptom of the neuropathy to her hands, along with the carpal tunnel syndrome. So it's the combination of the two that's precluding her ability to use her hands frequently throughout the day. Was there any exploration of occasional hand use in sedentary? I believe there was exploration, and I could be incorrect with regard to cross-examining the vocational expert, and if that were the case, there would be no doubt. Ms. Marcus, it's Judge Scudder. I have a question for you. The one difficulty that I had with the ALJ's opinion is it does seem to cover off the lupus just fine. The sedentary restriction is definitely in place, but doesn't sedentary require the individual to be on their feet up to two hours in an eight-hour work shift, just under the regulations and the definitions? Correct, Your Honor, and that's where we think the Administrative Law Judge erred in this case, because the records, at least in terms of what she's reporting to her providers, is that there are days that she cannot wear her shoes due to the pain. There's a reference to seeking out treatment due to nail issues, and she can only partially feel the injection to her feet. And most recently, at that pain management treatment at the record at 1384, on a physical exam, she's presenting with pain to her bilateral feet. And so the problem is that the judge doesn't explain how this evidence and her testimony allow her to be on her feet two hours per day as required by the listing. And your point is that the ALJ just allowed the medical record to trump entirely her reports of what she was reporting about her day-to-day condition because of the neuropathy. I mean, that's kind of what I took away from your argument. And when you look at page 6 of 10 of the ALJ's opinion, there's a paragraph. There's the first full paragraph on the page reports your client's testimony and the difficulty that she's experiencing day-to-day. And then the next paragraph just wholesale discounts it, right, or lets the medical record kind of trump it. In other words, it doesn't meet the point she's making about neuropathy and the difficulty of standing or being on her feet up to two hours a day. Correct. And I think that that's the problem with this boilerplate listing is that—or boilerplate rationale is that it states that the record is not entirely consistent, but fails to talk about the pain, especially with respect to the neuropathy. And so if the judge doesn't explain why all these reports of pain are rejected, then we're left to guess, and the judge has failed to build that accurate and logical bridge between the record and the result. And, Your Honor, I think that's significant in this case because the primary symptom of sensory neuropathy is the numbness and tingling and pain. Secondarily to the subjective symptom analysis, Noonan argues that the residual functional capacity with respect to handling the mental health treatment also was flawed because what the judge did here is reject the agency's opinion that the impairments were non-severe and then arrive at a residual functional capacity with respect to mental health treatment all on his own—I'm sorry, her own. And the same rationale was used for mental health, that her mental health had improved over the course of treatment. But looking at her mental health treatment and her most recent counseling assessments, she's reporting that her health had worsened, she's in severe pain, and she's struggling to see through it with suicidal ideations reported. The judge's primary analysis was with respect to 4E, which is a functional report predated three years earlier, and this rationale is to improvement. So Noonan maintains that the judge here erred in terms of using that same subjective symptom rationale with respect to the mental health treatment and arriving at a residual functional capacity all on her own. It lacks medical underpinning. Is there anything in the medical evidence—I know there is in your client's testimony, but is there anything in the medical evidence that you can point to that would support a conclusion that she may not be able to stand for— be on her feet for up to two hours per day? And the reason I'm asking that, I'm looking at some of the—I'm looking at some notes I took about some of the treatment that she did receive for the neuropathy in, I guess it's the 2015 or, yeah, 15-16 time period. Can you point us to anything in the record that would address that point? The only thing that I could point to would be her rheumatologist, and it's not objective findings. That's really the problem here is that it's—pain is alleviated with respect to the neuropathy from rest and lying down. So that's the consistency that's throughout the record is she's reporting to providers that that's how her pain is alleviated. Well, there isn't much—I mean, in your brief you mention that the pain—that a lot of these things were treated conservatively, but I remember you also arguing that that's actually the only approach on the table for some of these conditions. Yes, Your Honor. I think that's the problem here is that if daily activities weren't considered, if pain wasn't considered, if improvement is incorrect, then all that's left is conservative care. And if you look at these particular conditions, all that was recommended at the end was pain management, which is what she's complying with. So the judge needed to confront the fact that in this case there's no more aggressive treatment that she could have obtained, and she's still reporting severe significant neuropathy. Okay. I'm going to let you save the last half minute for rebuttal, and we'll move to Ms. Schwartz. Good morning. My name is Allison Schwartz, and I represent the Commissioner of Social Security. Your Honors, the one thing that Ms. Noonan's counsel has not mentioned this morning is that the ALJ's residual functional capacity is more limiting than any medical source opinion of record. Why does that—you emphasize that in your brief, but I'm not sure that that makes it right. The ALJ is not persuaded by what the medical evidence is, thinks that she's more limited, but why does that comfort us that the ALJ landed on the right spot? Well, for a couple reasons. First of all, the case law that I pointed out in my brief has consistently held that when an ALJ finds limitations that are greater than any of the doctor's limitations in the record, there is no error. Now, Ms. Noonan has the burden to prove that her limitations cause her to be disabled. That's absolutely true, but I just—we do have a line of cases, though, in which we say that just because pain ultimately is hard to verify from the outside, so to speak, it doesn't mean that it's not real. And I don't know what else these doctors could have said about her pain. Doctors are constantly saying, you know, is your pain on a scale of 1 to 10, how bad's your pain? Somebody will say, oh, it's a 7. Well, you don't know what a 7 really means, but she certainly consistently reports to the doctors that she's in pain, and I don't see—you know, in other words, I'm not sure I'm persuaded by your statement that this RFC actually fully reflects what the doctors were working with. The Social Security Act provides that an individual's statement about their pain is not enough to establish disability. And she has much more than that. She's seeking medical help for the pain. She's seeking medication for the pain. She's, you know, following advice with this conservative treatment, resting. You know, this is not a, gee, I'm in big pain, and that's all that was said kind of case. She's got a plethora of underlying conditions, including a rather severe case of diabetes, where she has the life-threatening diabetic ketoacidosis incidence. People die from that. So it's not a small thing. There's a couple parts to answer your question. The first one is about the ketoacidosis, which the records show that she had those issues because she was not compliant with her medication. The second thing is that— And then what do you draw from that? We also have evidence of depression. Do we refuse to give people Social Security benefits who are noncompliant, regardless of the reason, whether it's financial or psychological or just obstinacy? No, but in this case, we have to look at the record that's before us. And in this case, the record shows that once Ms. Noonan started to get treatment for her depression, her diabetes became under better control. The ALJ cited multiple examinations that showed that even though she didn't have— even though she had issues with gait, she had full strength. She had normal strength in her upper body. She had normal sensation, normal tone. SSR 16-3P instructs ALJs, when considering a claimant's allegation of pain, to compare it against objective findings. For example— I'm not sure she had normal sensation. She's got the diabetic neuropathy, which means she doesn't have good sensation in her feet, and it's reflected in her gait. Well, once she got her diabetes under control, she had— if you look at her most recent exam, the pain exam in November 2016 that Ms. Noonan's counsel referenced, normal gait, normal muscle tone, normal strength, sensation, and reflexes. If you look earlier, no joint pain, no weakness, no numbing. Yes, her symptoms fluctuated, and she had deficits. However, the question is whether or not the ALJ explained the bases for her RFC. And the ALJ explained that Ms. Noonan was limited to sedentary work. Now, the thing with the standing and walking for two hours, I just would like to reference that as well. The regulations provide standing and walking for at most two hours. There's no evidence that in these jobs Ms. Noonan is going to be standing and walking for a maximum of two hours. Most of these jobs involve sitting. And, you know, it is telling that Ms. Noonan never had an opinion from any of her treaters showing that she wasn't able to stand or walk for two hours. There's nothing in the record, as the courts noted before, there was nothing in the record suggesting an inability to stand or walk for two hours. And Ms. Noonan's argument just appears to turn the entire burden of proof on its head. At all relevant times, Ms. Noonan, not the ALJ, is the burden of proof. And the ALJ weighed the evidence and explained. She built a logical bridge explaining why she was limited to sedentary work. The court cannot substitute its judgment. Judge Scott, I have a question. Yeah, no, I understand that. But when you say, you know, very broadly that there's no evidence and the burden is on the claimant, et cetera, et cetera, in that paragraph that I was talking to Ms. Marcus about on page 6, I mean, there is some information in there, isn't there, from the plaintiff that would at least raise a question about whether she could be on her feet for up to two hours? And the point that I was trying to make earlier is that it's just not addressed in the ALJ's opinion. It's kind of subsumed within the sedentary finding. But, you know, she testified, for example, that she lays down almost all day for about four out of seven days, you know, et cetera, et cetera. It's just, you know, so there is some evidence. I mean, her testimony is evidence. But the ALJ cannot find her disabled based on the evidence alone. Well, the ALJ didn't explain which parts of her evidence were consistent with the medical evidence, which parts of her testimony was exaggerated. We just get this useless, not entirely consistent, and, you know, you want to say, well, okay, go on and tell us which parts you think, you know, do you think that she needs help taking showers? Do you think that she's actually driving? Do you think that she doesn't really have, you know, that the medical evidence doesn't show that she's got hip pain? I mean, there are questions the ALJ could address. The very first line of that paragraph on page 6 says, the claimant said she's unable to stand, walk, or sit for long periods. So if we're confident that sedentary is the right limitation to achieve that, you'd expect there to be some explanation of it. The ALJ does not need, this court has held that the ALJ does not need to explain which statements are and are not credible. And the ALJ did not find any evidence, did not find enough evidence in the record proving that she was unable to stand or walk for two hours. The ALJ does not need. We've only said that, we've only said that just to be accurate. When there is a thorough explanation from the ALJ supporting the ultimate conclusion, we haven't just said, well, you don't have to explain yourself. But sometimes when this is the case, the ALJ does not. Well, look, it seems like this is just enough. The ALJ explained that Ms. Noonan had deficits, and once she obtained treatment for those deficits, her condition improved. This is Ms. Noonan's attempt to reweigh the evidence. Ms. Noonan does not like the way that the ALJ came out. But the ALJ explained that while Ms. Noonan had some deficits, her condition responded well to treatment. And if you look at the treatment record, including the records that I cited before you today, there is support for that. And even if reasonable minds could differ, the ALJ's decision is well supported, and the court should affirm it. All right. Thank you very much. Ms. Marcus, you only have about half a minute, but we'll let you wrap up. Just with respect to the regulation 20 CFR 1529, it discusses how statements made by providers and statements made to providers are considered objective evidence that's sent into the subjective symptom analysis. And in this case, we have consistent reports by Noonan to her providers that she's in pain and that she needs to lie down and remove her shoes at times due to the neuropathic pain. Thank you, Your Honors. All right. Thanks to both counsel. We will take this case under advisement.